FILED

2016 Mar-17  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
### Northeastern Division

| | |
|---|---|
| ADVANCED STRUCTURAL DESIGN, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: |
| ) | |
| BILL HOPKINS - MORGAN COUNTY ) | |
| SUPERINTENDENT, individually as ) | |
| Well as in his official capacity, ) | |
| MORGAN COUNTY (ALABAMA) ) | |
| BOARD OF EDUCATION, ) | |
| VOLKERT, INC., TERRACON ) | |
| CONSULTANTS, INC., BAGGETTE ) | |
| CONSTRUCTION, INC., BLACKBURN ) | |
| DANIELS O'BARR, INC., MCKEE & ) | |
| ASSOCIATES ARCHITECTURE AND ) | |
| INTERIOR DESIGN, INC. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Advanced Structural Design, Inc. brings this Complaint against Defendants Morgan County Schools Superintendent Bill Hopkins, in his individual and official capacity, Morgan County (Alabama) Board of Education, Volkert, Inc., Terracon Consultants, Inc., Baggette Construction, Inc., Blackburn Daniels O'Barr, Inc., and McKee & Associates Architecture and Interior Design, Inc. and states the following:

## PARTIES

1.       Advanced Structural Design, Inc. ("ASD") is an Alabama corporation with a principal place of business in Morgan County, Alabama.

2.       Upon information and belief, Bill Hopkins ("Hopkins") is an adult resident of Morgan County, Alabama. Hopkins is the Superintendent of the Morgan County School District.  This complaint is brought against him in both his individual and official capacity.

3.       Upon information and belief, the Morgan County Board of Education ("MCBE") is the governing body of the Morgan County, Alabama School District. The MCBE maintains a principal place of business in Decatur, Morgan County, Alabama.

4.       Upon information and belief, Volkert, Inc. ("Volkert") is an Alabama corporation with its principal office located in Mobile County, Alabama.

5.       Upon information and belief, Terracon Consultants, Inc. ("Terracon") is a Delaware corporation with its principal office located in Lenexa, Kansas. Terracon is registered to do business in the State of Alabama.

6.       Upon information and belief, Baggette Construction, Inc. ("Baggette") is an Alabama corporation with its principal place of business in Morgan County, Alabama.

7.     Upon information and belief, Blackburn Daniels O'Barr, Inc. ("BDO") is an Alabama corporation with its principal place of business in Lowndes County, Alabama.

8.     Upon information and belief, McKee & Associates Architecture and Interior Design, Inc. ("McKee") is an Alabama corporation with its principal place of business located in Montgomery County, Alabama.

## JURISDICTION

9.     This Court has original, federal question jurisdiction over ASD's claims for copyright infringement under the Copyright Act, 17 U.S.C. § 501(a), pursuant to 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction over ASD's remaining claims pursuant to 28 U.S.C. § 1367 because Plaintiff's additional claims form part of the same case or controversy as Plaintiff's claims for copyright infringement.

## VENUE

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a) because (i) the Plaintiff and at least three of the defendants have principal places of business within the Northern District of Alabama; (ii) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Alabama; and (iii) this Complaint concerns acts and

3/310700.6

omissions related to the construction of the New Priceville High School located within the Northern District of Alabama.

## FACTUAL BACKGROUND

11.    On or about December 13, 2012, MCBE contracted with GBW Architects, P.C. ("GBW") for architectural services related to the construction of the New Priceville High School in Priceville, Alabama.

12.    As the architect for the New Priceville High School project, GBW was responsible for employing various consultants to observe and certify that certain aspects of the construction project were completed according to required specifications. One of the consultants required to be engaged by GBW was a Structural Engineer.

13.    ASD was formed and began operations on or around June 3, 2013. With the knowledge of MCBE and its agents, GBW contracted with ASD on or about June 13, 2013 to provide structural engineering services for the project. Although GBW did not formally contract with ASD until June 2013, Jeff Hillman ("Hillman"), principal of ASD, had been consulting with GBW, MCBE, and other interested parties on the New Priceville High School project since before MCBE formally contracted with GBW in December 2012.

14.    MCBE engaged Volkert as the on-site construction manager for the project. Volkert was to serve as the representative of MCBE at the job site;

4

however, Volkert did not maintain a constant on-site presence, and for all that appears, it should have had a constant on-site presence during construction. Furthermore, Volkert was never present at the job site while ASD was performing its routine construction observations.

15.     Baggette contracted with MCBE to serve as the general building contractor for the project.

16.     Terracon served as the project's on-site special inspector. Terracon was tasked with inspecting construction activities and documenting conformance with the building designs dictated by GBW and its consultants, including ASD. Terracon drafted periodic reports of its findings and inspections to GBW, GBW's consultants, MCBE, and Volkert.

17.     Because the project involves a public school, the Alabama Building Commission also has supervisory authority to ensure code compliance and conformance with approved construction documents. John Vandiver ("Vandiver") served as the original North Region Inspector responsible for inspection of the New Priceville High School project prior to his retirement.

18.     As the structural engineer of record for the New Priceville High School project, ASD agreed to provide MCBE and GBW structural design drawings for the project based on layout drawings provided to ASD by GBW. ASD expressly reserved all copyright rights in and to its technical drawings.

5

ASD's technical drawings are registered with the U.S. Copyright Office, Registration No. VAU001236677.

19.     ASD's structural designs were required to, and did, conform to the 2009 International Building Code, guidelines promulgated by the American Society of Civil Engineers, and other regulations and guidelines adopted by the State of Alabama and its agencies. Because Terracon served as the special inspector, ASD relied on Terracon's regular reports to ensure that the construction was proceeding in accordance with ASD's structural designs.

20.     From the outset of the project, MCBE and its construction manager Volkert insisted upon an unreasonably short build time. Due to MCBE and Volkert's insistence on speedy construction, on several occasions, Baggette and its subcontractors began constructing certain components of the project before receiving approved fabrication drawings from ASD. In some instances, Baggette began construction prior to even submitting fabrication drawings to ASD for review.

21.     Over the course of the first six months of construction, Terracon's reports contained no substantive indication that construction was not progressing properly and in conformance with ASD's structural design drawings.

22.     However, problems soon began to surface. Over the course of several site inspections in mid-2014, Hillman, ASD's principal structural engineer, and

6

others, observed improper construction techniques. Terracon's reports had not indicated any problems with the observed areas. On October 15, 2014, ASD issued a report that identified at least 43 inaccurate reports previously issued by Terracon. Hillman repeatedly informed Terracon's inspectors, Brandon Smith and Albert Legg, that their reports did not reference the correct structural drawings.

23.     As a result of the discrepancy between Terracon's reports and ASD's observations, ASD requested testing of 90 load-bearing walls. Terracon tested 35 of the walls identified by ASD using ground penetrating radar and thermal imagining. Of the 35 tested, 33 contained significant construction defects. At least 25 of the walls tested had to be torn down and rebuilt in order to conform to the plans and specifications.

24.     Over 3,000 construction errors were documented by ASD up to the time of ASD's termination from the project. Upon information and belief, less than half of those errors were addressed by Baggette, Volkert, or MCBE. Of those errors that were addressed, a significant number of the repairs still failed to conform to ASD's plans and specifications. Based on its review of Terracon's reports and its own observations, ASD determined that a number of the construction defects, if left unrepaired, could result in life-safety issues with the building.

25.     ASD also determined that many of the errors appeared to be the result of the unreasonably hurried construction timeline demanded by MCBE and Volkert.

26.     Because of the quantity and severity of the construction errors observed by ASD and not documented by Terracon, Hillman informed everyone involved with the New Priceville High School project of ASD's findings and concerns in June 2014 and again in October 2014, including MCBE Superintendent Hopkins, and representatives of Volkert, Baggette, Terracon, GBW, and the State of Alabama Building Commission.

27.     Following ASD's first disclosure of the numerous construction defects, the State of Alabama Building Commission's North Region Inspector, John Vandiver, performed his own inspection of the construction progress in or around August 2014. As a result of ASD's findings, and due to Hopkins and MCBE's failure to take appropriate action, Vandiver demanded that Terracon's inspectors be removed from the job site and replaced because of their failure to accurately document and report construction errors. Smith and Legg, the original Terracon inspectors, were subsequently replaced.

28.     All of the interested parties, including MCBE, Volkert, Baggette, GBW, and ASD, began discussing options for remedying the construction errors identified by ASD, the new Terracon construction team, and during additional

8

testing. Although a number of the defects were capable of being fixed through the addition of supports, bracing, and other supplemental measures, ASD determined that many of the construction defects required sections of the construction to be torn down and rebuilt in order to be brought into conformance with the construction drawings and various building requirements.

29. Despite ASD's insistence that the safety of the building was potentially compromised by the numerous construction defects, MCBE, Volkert, and others demonized Hillman, ASD, and GBW and accused them of unnecessarily delaying construction. Instead of acting to quickly and responsibly address the problems, MCBE, Volkert, and Baggette engaged in a smear campaign against the very parties who were doing their jobs to ensure the safety of the building and future students.

30. Even in light of the ongoing problems and unresolved remedies, construction continued throughout 2014 and into 2015 in spite of continued warnings of defects potentially involving life safety issues in the buildings. Additional construction defects were documented and many of the previously identified errors were never resolved.

31. In its capacity as the structural engineer of record for the project, ASD informed MCBE, Volkert, Baggette, and others that ASD could not sign-off on the structural integrity of the project, and certify the building for occupancy, unless all

of the material errors were properly corrected. Volkert, however, consistently reported to Hopkins and MCBE that the only construction delays were those caused by weather. Hopkins and MCBE refused an offer by GBW to provide additional project updates.

32.    In August 2015, GBW requested a meeting with Kathryn Lynn, Director of the Alabama Building Commission ("ABC"). During the meeting, which was also attended by ASD, Ms. Lynn requested that ASD identify what it considered to be Priority #1 life safety issues in the construction.

33.    Due to ASD's insistence that the construction defects be fully repaired in the proper manner, which in some cases required teardown and rebuild, MCBE scheduled a meeting of the design and construction teams in or around September 2015 and included representatives of the ABC. At this meeting, Ms. Lynn overtly sided with MCBE and Volkert, asking ASD and GBW what *they* intended to do to correct the project. ASD and GBW, however, were doing exactly what they were hired to do—ensure that the New Priceville High School was constructed according to the building's designs, in conformance with required codes and guidelines, and, ultimately, in a manner that was safe for students. ASD, therefore, refused to accept construction errors and defects.

34.    ASD and GBW refused to compromise on the structural integrity of the project or the safety of the school's students, and as a result, ASD could not

10

agree to certify the structural integrity of the building's storm shelter while material errors remained. GBW could not agree to certify above ceiling inspections or sign substantial completion documents.

35.     Despite Baggette and Volkert's refusal to undertake necessary repairs, and because ASD and GBW would not compromise on the structural integrity of the building by agreeing to inadequate repairs, MCBE terminated ASD and GBW from the project on November 11, 2015. At the time of its termination, ASD was owed in excess of $55,000 for services already performed.

36.     MCBE replaced GBW with McKee, and ASD was replaced by BDO.

37.     Soon after its termination, ASD formally demanded the return of all of its technical drawings related to the project. Neither MCBE, Volkert, Baggette, nor any of the subcontractors have any right to the continued use, reproduction, distribution, or modification of ASD's copyrighted drawings. Nonetheless, every Defendant has refused to return ASD's drawings.

38.     Upon information and belief, after terminating ASD, MCBE or one of its agents or representatives and/or BDO unlawfully reproduced ASD's drawings and distributed those reproductions to at least McKee, Volkert, MCBE and Terracon. Even prior to ASD's termination, Lynn Blackburn of BDO included an ASD drawing in his report, and, he attached his seal to a revision of the drawing. ASD did not consent to BDO reproducing, modifying, or distributing its drawings.

3/310700.6

39.    ASD has reason to believe that McKee and BDO have used, modified, and created derivative works of ASD's drawings in order to continue with the construction of the project, notwithstanding that ASD was terminated from the project because of its insistence that the construction team remedy their failures to conform to ASD's drawings.   ASD further believes that McKee and BDO have used ASD's drawings to perform above ceiling inspections and to create substantial completion documents and other documents required by the Alabama Building Commission.

40.    Prior to replacing ASD as the structural engineer of record for the project, however, BDO performed a peer review of ASD's storm shelter design and drawings, certifying that ASD's drawings conformed to required building codes and guidelines. Now, having replaced ASD, BDO is allowing MCBE and the construction team to continue construction without holding them to accountable ASD's construction designs, which BDO itself had earlier approved. Moreover, ICC 500-08, one of the governing building regulations, dictates that the same engineer cannot act as the engineer of record for the project and the peer review engineer. BDO now fills both of those roles. In addition, ICC 500-08 also states that an engineer is required to observe each major phase of construction of the storm shelter. BDO cannot satisfy that requirement, and, as a result, BDO cannot certify the storm shelter in accordance with construction requirements.

12

## COUNT ONE

### Copyright Infringement - 17 U.S.C. § 501(a) et seq.

41.    ASD restates and incorporates the preceding paragraphs as if fully stated herein.

42.    ASD created numerous technical drawings related to its work as the structural engineer of record for the New Priceville High School project.

43.    ASD retained all rights under 17 U.S.C. § 106, et seq. in and to its technical drawings.

44.    ASD is the owner of U.S. Copyright Registration No. VAU001236677, which consists of ASD's technical drawings for the New Priceville High School project.

45.    Following ASD's termination from the New Priceville High School project, Hopkins, MCBE, Volkert, Baggette, McKee, and/or BDO unlawfully reproduced, distributed, and prepared derivative works based upon ASD's copyrighted works.

WHEREFORE, premises considered, ASD respectfully requests judgment against all Defendants on this Count and an award of any and all damages available to Plaintiff pursuant to 17 U.S.C. §§ 502 – 505 as determined by the Court and the trier of fact, including but not limited to, injunctive relief, impoundment of infringing articles, damages, Defendants' profits, costs of this

3/310700.6

action, attorney fees, and such other further and different relief as the Court may deem appropriate.

## COUNT TWO

### Breach of Contract

46.     ASD restates and incorporates the preceding paragraphs as if fully stated herein.

47.     ASD agreed to provide structural engineering consulting services to MCBE for the New Priceville High School project.

48.     Furthermore, ASD is an intended beneficiary of MCBE's contract with GBW.

49.     As an intended beneficiary between MCBE and GBW, MCBE paid ASD for its services for a period of time; however, MCBE stopped paying when ASD refused to compromise with regard to repairs.

50.     MCBE terminated ASD from the project without cause.

51.     MCBE's failure to pay ASD for services performed and its improper termination of ASD from the project breached MCBE's agreement with ASD.

52.     Pursuant to its contract with MCBE, GBW was required to retain a structural engineer. MCBE was aware that GBW intended for Hillman to serve as the structural engineer of record, and MCBE approved GBW's retention of Hillman and ASD.

53.    MCBE breached its contract with GBW, of which ASD was an intended beneficiary, by improperly terminated GBW from the contract.

54.    ASD was harmed by MCBE's breaches of its contractual duties.

WHEREFORE, premises considered, ASD seeks compensatory and exemplary damages in an amount to be determined by the trier of fact, and such other and further relief as the Court may deem appropriate.

## COUNT THREE

### Intentional Interference with Contractual and Business Relationships under Alabama Common Law

55.    ASD restates and incorporates the preceding paragraphs as if fully stated herein.

56.    GBW contracted with ASD to provide structural engineering services for the New Priceville High School project, and it had other business relationships as a result of the project.

57.    Defendants were aware of and approved GBW's contractual relationship with ASD. Defendants interacted extensively with ASD over the course of the project and were aware of ASD's business relationships related to this project.

58.    No Defendant was a party to ASD's contract with GBW. MCBE, Volkert, and the remaining Defendants intentionally interfered with ASD's contractual relationship with GBW and other business relationships by, among

15

other things, terminating GBW from the New Priceville High School project without proper cause and specifically demanding ASD's simultaneous termination.

59.    ASD has been harmed by Defendants' intentional interference with ASD's contractual and business relationships.

WHEREFORE, premises considered, ASD seeks all equitable relief, compensatory and exemplary damages, including but not limited to disgorgement by Defendants of all income and profits wrongfully obtained, and exemplary damages sufficient to punish the wrongful acts of Defendants.

<u>**COUNT FOUR**</u>

**Civil Conspiracy under Alabama Common Law**

60.    ASD restates and incorporates the preceding paragraphs as if fully stated herein.

61.    Hopkins, MCBE, Volkert, Baggette, Terracon, McKee, and BDO (together and/or in any combination of two or more), did combine, associate, agree, mutually undertake or concert together for the purpose of willfully, maliciously and without legal justification injuring ASD in its trade or business by interfering with ASD's contractual and business relationships.

62.    Hopkins, MCBE, Volkert, Baggette, Terracon, McKee, and BDO (together and/or in any combination of two or more), did combine, associate, agree, mutually undertake or concert together for the purpose of willfully,

maliciously and without legal justification injuring ASD by unlawfully infringing ASD's copyrights in violation of 17 U.S.C. § 501(a).

WHEREFORE, premises considered, ASD respectfully requests judgment against Defendants on this Count and an award of its compensatory damages, in an amount to be determined by the trier of fact, plus equitable relief, punitive damages, and interest, costs of this action, attorney fees, and such other further and different relief as the Court may deem appropriate.

## COUNT FIVE

### Unjust Enrichment

63.    ASD restates and incorporates the preceding paragraphs as if fully stated herein.

64.    ASD performed structural engineering services for the New Priceville High School project.

65.    At the time of MCBE's termination of GBW and ASD from the project, ASD was owed in excess of $55,000 for structural engineering services provided.

66.    Defendants retained the benefit of ASD's services without compensating ASD. As a result, Defendants have been unjustly enriched at the expense of ASD.

17

WHEREFORE, the premises considered, ASD seeks a judgment upon this Count against Defendants for compensatory damages, costs, interest and other losses in such amount as the Court may assess, but not less than $55,000, which is due and owing for services provided by ASD.

## COUNT SIX

### Conversion

67.    ASD restates and incorporates the preceding paragraphs as if fully stated herein.

68.    ASD created technical drawings related to its work as the structural engineer of record for the New Priceville High School project. ASD retained all right, title, and interest in and to its drawings.

69.    Upon ASD's termination from the project, it demanded the return of its drawings from the Defendants.

70.    Defendants refused to return ASD's drawings, and upon information and belief, Defendants remain in possession of the drawings and have continued to use them in furtherance of construction of the project.

71.    ASD has been harmed by Defendants' conversion of ASD's technical drawings.

WHEREFORE, the premises considered, ASD seeks a judgment upon this Count against Defendants for compensatory and punitive damages, costs, interest and other losses in such amount as the Court may assess.

## COUNT SEVEN

### Declaratory Judgment – 22 U.S.C. § 2201

72.     ASD restates and incorporates the preceding paragraphs as if fully stated herein.

73.     Pursuant to 28 U.S.C. § 2201, this Court has the authority to determine any controversy that exists between the parties.

74.     As set forth above, ASD reported numerous construction errors in the New Priceville High School project and required that those errors be adequately and properly remedied.

75.     Instead of ensuring that proper repairs were made to remedy the reported errors, Defendants pressured ASD to revise its findings and accept less-than-full repairs.

76.     ASD refused Defendants' demands and insisted that the repairs be adequately and fully remedied, including, where necessary, for the defective areas to be torn down and rebuilt.

77.     As a result of ASD's insistence on full and proper repairs, Defendants fired ASD from the project.

78.     Notwithstanding ASD's termination from the project, Defendants have continued to use ASD's structural designs and drawings to continue construction of the project.

79.     Despite continuously and timely responding to Terracon's reported construction errors and insisting on repairs to bring the project in conformance with its designs and drawings, ASD was unable to motivate Defendants to remedy the defects.

80.     If a structural failure occurs in the New Priceville High School, ASD may be subjected to lawsuits or other claims arising out of the failure of the Defendants to conform to ASD's designs and drawings, despite ASD's best efforts to report and remedy such structural deficiencies.

WHEREFORE, premises considered, ASD requests that the Court enter an order on this Count in favor of ASD and against Defendants that (i) requires Defendants to fully and adequately make the repairs identified by ASD, including, where necessary, tearing down and rebuilding portions of the construction, and/or (ii) requires Defendants to indemnify and hold ASD harmless from any claims resulting from any future structural failure of the New Priceville High School project related to errors and defects identified by ASD or that arose after ASD's termination from the project, and/or (iii) finds ASD has fulfilled its responsibilities to Defendants and shall have no further liability to any individual or entity as a

3/310700.6

result of this project, and/or (iv) permanently enjoins Defendants from occupying the New Priceville High School until all construction errors and defects have been adequately and fully remedied.

## **JURY DEMAND**

Plaintiff requests a trial by struck jury as to all issues in this case.


Respectfully submitted this 17th day of March, 2016.


/s/ David W. Holt_____
G. Bartley Loftin III (ASB-2621-178G)
David W. Holt (ASB-9723-D64H)


BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West
Suite 900
Huntsville, AL 35801-4900
Telephone: (256) 517-5100
Facsimile: (256) 517-5200

*Attorneys for Plaintiff*
*Advanced Structural Design, Inc.*

21